**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| In Re: | CHAPTER 11 |
| | CASE NO.:  6:10-bk-20709-KSJ |
| **TEMPUS RESORTS** | |
| **INTERNATIONAL, LTD., et al.** | Jointly Administered with Case Nos. |
| | 06:10-bk-20712-KSJ; 06:10-bk-20714-KSJ; |
| Debtors. | 06:10-bk-20715-KSJ; 06:10-bk-20716-KSJ; |
| | 06:10-bk-20717-KSJ; 06:10-bk-20718-KSJ; |
| | 06:10-bk-20719-KSJ; 06:10-bk-20720-KSJ |
| _____/ | |

**SECOND INTERIM ORDER AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, GRANTING ADEQUATE PROTECTION, AND GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS AND NOTICE OF FINAL HEARING FOR FEBRUARY 9, 2011 AT 1:00 P.M.**

This case came on for hearing on November 23, 2010 and December 8, 2010 (collectively, the "Hearing") upon the motion (the "Motion") (Doc. No. 5) of Tempus Resorts International, Ltd. and its above-captioned co-Debtors affiliates (collectively, the "Debtors", as Debtors and debtor-in-possession) for the entry of an order pursuant to sections 105, 361, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing it to: (i) obtain post-petition financing pursuant to section 364 of the Bankruptcy Code from Tempus Acquisition, LLC., as lender (the "Post-Petition Lender"), subject to the terms and conditions set forth herein and that certain Post-Petition Loan and Security Agreement (the "Post-Petition Loan Agreement") and (ii) grant mortgages, security interests, liens and claims to the Post-Petition Lender (including claims pursuant to section 364(c)(1) of the Bankruptcy Code, and liens pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code) and other liens and superpriority

103656260.1

claims as set forth herein, all as more fully set forth herein, and upon the proceedings held before this Court and good and sufficient cause appearing therefor,

A. On November 19, 2010 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are now operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no official committee has yet been appointed in the Chapter 11 Cases.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Case and the Motion in this district are proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**THE COURT HEREBY FINDS THAT:**

C. On November 24, 2010, this Court entered its Interim Order Authorizing Debtors to Obtain Post-Petition Financing Pursuant to Sections 363 and 364 of the Bankruptcy Code, Granting Adequate Protection, and Granting Liens, Security Interest and Superpriority Claims [Docket No. 27] (the "First Interim Order").

D. An immediate and critical need exists for the Debtors to obtain funds in order to avoid irreparable harm and continue the operation of its business in accordance with the Budget (as hereinafter defined). The Debtors are unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code, or unsecured debt having the priority afforded by section 364(c)(1) of the Bankruptcy Code.

E. For the purpose of this Interim Order only and subject to the last sentence of this paragraph E, the Debtors admit, stipulate, agree and acknowledge that almost all of the Debtors'

assets (the "Prepetition Collateral") are subject to the valid, binding, perfected, enforceable, first priority liens on and security interests granted by the Debtors prior to the Petition Date (the "Prepetition Liens") to, in the case of the Debtors' assets associated with their operations in Florida, Resort Finance America, LLC ("RFA"), and, in the case of the Debtors' assets associated with their operations in South Carolina, Textron Financial Corporation ("Textron" and, together with RFA, the "Prepetition Lenders").  Notwithstanding any of the foregoing, the Debtors assert that certain of the Prepetition Liens of RFA are avoidable as preferential and/or fraudulent transfers and recoverable for the benefit of the Debtors' estate pursuant to sections 547, 548, and 550 of the Bankruptcy Code.

F.  For the purposes of this Interim Order only, the Debtors acknowledge that, subject to section 552 of the Bankruptcy Code, all cash collateral (as defined in Bankruptcy Code section 363(a)) in their possession or control arising from, or constituting proceeds of, the Prepetition Collateral and the Post-Petition Collateral (as hereinafter defined) constitutes collateral of the Prepetition Lenders (the "Cash Collateral")

G.  Other than as provided in this Order, the Debtors are unable to obtain financing acceptable to the Debtors.

H.  The Post-Petition Lender is willing to provide the additional financing contemplated herein, all subject to the conditions set forth herein and the provisions of this Interim Order assuring that the Post Petition Liens and the various claims, superpriority claims, and other protections granted pursuant to this Interim Order will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing agreement contemplated by this Interim Order.  The Post-Petition Lender has acted in good faith

3

in consenting to and in agreeing to provide the post-petition financing contemplated by this Interim Order. The reliance of the Post-Petition Lender on the assurances referred to above is in good faith.

    I.    Notice of the hearing on the Motion and this Interim Order has been provided (by hand, email, facsimile, overnight mail, or courier) to counsel to the Prepetition Lenders, to the United States Trustee, and to the creditors listed on the statement filed by the Debtors pursuant to Bankruptcy Rule 1007(d) and Local Rule 1007-2. In view of the urgency of the relief requested, such notice constitutes sufficient notice under Bankruptcy Rules 4001(c)(2) and 4001(c)(3) and no other notice need be given.

    J.    Good cause has been shown for the entry of this Interim Order.

    K.    The Post-Petition Lender is entitled to the protections provided by section 364(e) of the Bankruptcy Code.

    L.    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The permission granted herein to allow the Debtors to obtain funds hereunder is necessary to avoid immediate and irreparable harm to the Debtors and their estates. The entry of this Interim Order is in the best interests of the Debtors' estates as its implementation will, among other things, allow for the continued operation and rehabilitation of the Debtors' existing businesses.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

    1.    The Debtors hereby are authorized to borrow money pursuant to the terms of this Interim Order and the provisions of the Post-Petition Loan Agreement to the extent not inconsistent with the provisions of the Interim Order and perform its obligations hereunder and thereunder, solely in accordance with, and subject to, the terms of this Interim Order, in

compliance with and for the purposes of funding those expenses set forth in the budget attached hereto as **Exhibit A** (as may be supplemented from time to time, the "Budget") (the "Post-Petition Loans"). The Debtors shall be authorized to borrow funds pursuant to this Interim Order: (a) in the amounts set forth in the Budget (after taking the "Variance" (hereinafter defined) into account) and (b) until the aggregate amount of the Post-Petition Loan under this Interim Order reaches $4,000,000.00 (the "Loan Limit"). The determination of compliance with the Budget shall be made on a week-ending basis for each week until the occurrence of a Termination Event (hereinafter defined). Notwithstanding the foregoing, the Debtors shall be deemed to be in compliance with the Budget so long as its total cash disbursements, on a cumulative basis, tested weekly, are less than 105% of the amount provided for in the Budget for each respective week (the "Variance"). The Debtors are authorized to enter into such non-material modifications and amendments consistent with the Variance without further Court order as may be agreed upon in writing by the Debtors and the Post-Petition Lender. Pursuant to this Interim Order and the Post-Petition Loan Agreement, the Post-Petition Loans shall accrue interest on the outstanding principal amount thereof at a rate equal to 10% per annum. Notwithstanding any other provision of this Interim Order, the Post-Petition Lender shall not have any obligation or commitment to make Post-Petition Loans pursuant to this Interim Order until the conditions precedent provided for herein have been satisfied, in which case, the Post-Petition Lender shall fund such amounts set forth in the Budget, absent any Default (as defined in the Post-Petition Loan Agreement) or other breach under the Post-Petition Loan Agreement and/or Termination Event or any order of the Court.

2. As security for all loans, advances, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time hereafter be owing by the Debtors

to the Post-Petition Lender hereunder (all such loans, advances, indebtedness or obligations are the "Post-Petition Loans"), the Post-Petition Lender is hereby granted valid, binding, enforceable, and perfected security interests in and liens (the "Post-Petition Liens") in and to all currently owned or hereafter acquired property and assets of each of the Debtors of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising, and all proceeds, products, rents and profits thereof, including, without limitation, all cash, goods, accounts, accounts receivable, inventory, chattel paper, instruments, documents, letter of credit rights, cash-in-advance deposits, general intangibles, contracts, patents, deposit accounts, real estate, fixtures, machinery, securities, investment property, financial assets, software, equipment, vehicles, trademarks, trade names, licenses, litigation proceeds (exclusive of actions and causes of actions under Chapter 5 of the Bankruptcy Code), rights to payment including tax refund claims, insurance proceeds and tort claims and the proceeds, products, rents, and profits of all of the foregoing (all of the foregoing, the "Post-Petition Collateral"), which Post-Petition Liens are in each case: (a) junior in priority only to Permitted Liens (as defined in the Post-Petition Credit Agreement) that are valid, binding, enforceable, and perfected liens existing in the Prepetition Collateral, and to such proceeds, profits, products, rents, income, accounts, and other assets to which the Prepetition Liens extend pursuant to Section 552 of the Bankruptcy Code and that are not subject to avoidance or subordination pursuant to section 364(c)(3) of the Bankruptcy Code, and (b) senior and superior liens on all property of the Debtors' estates that are not otherwise subject to a security interest or lien, pursuant to section 364(c)(2) of the Bankruptcy Code.

3.     Except as expressly set forth in this Interim Order, the liens granted in this Interim Order: (a) shall be subject to any Permitted Liens, but not to any other lien which is avoided and

103656260.1

preserved for the benefit of the Debtors' estate under section 551 of the Bankruptcy Code; and (b) shall not be subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise; and (c) shall be subject to the unpaid fees of the clerk of the Bankruptcy Court or District Court, as applicable, and of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (b).

4.  As adequate protection under sections 105, 361, 363 and 364 of the Bankruptcy Code, the Prepetition Lender is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) valid, binding, enforceable and perfected liens (the "Adequate Protection Liens") in all Post-Petition Collateral to secure an amount of Prepetition Indebtedness (the "Adequate Protection Obligations") equal to the sum of the aggregate amount of diminution in value of their respective Prepetition Collateral, if any, including cash collateral, whether by depreciation, use, sale, loss, decline in market price, or otherwise resulting from Debtors' use of the Prepetition Lenders' Cash Collateral, the imposition of the automatic stay, the granting of the Post-Petition Liens.  For purposes of this Interim Order, the Adequate Protection Liens are subject only to: (i) the Post Petition Liens (subject to the following sentence); and (ii) any liens or security interests existing on or in the Post-Petition Collateral that are valid, binding, enforceable, and perfected liens on the Petition Date that are not otherwise subject to avoidance or subordination.  The Court shall reserve for later resolution (i) whether the lien and security interests granted hereunder in favor of the Post-Petition Lender shall extend to any property with respect to which any lien or security interest in favor of a Pre-Petition Lender is avoided pursuant to Chapter 5 of the Bankruptcy Code and (ii) whether the relative priority of the Adequate Protection Liens and the Post-Petition Lien granted the Post-

7

Petition Lender hereunder. In addition, as of the Petition Date, RFA shall continue to have authority to sweep the Debtors' lockbox accounts consistent with past practices; provided, however, any funds received by RFA in connection with a sweep of lockbox accounts shall be credited to amounts owed to RFA on account of any allowed secured claim..

5. Subject to the remaining provisions of this Order, (a) the Post-Petition Loans shall have priority in accordance with the provisions of section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), or 726 of the Bankruptcy Code ("Superpriority"), and (b) the Adequate Protection Obligations shall have Superpriority as well..

6. The Post-Petition Loans shall become due and payable, without notice or demand, on the Termination Date (as hereinafter defined). From and after the Termination Date, the Post-Petition Lender shall have no obligation to lend, and the Debtors shall have no authority to use Post-Petition Collateral of the Post-Petition Lender.

7. From and after the Petition Date, the proceeds of the Post-Petition Loans and the Post-Petition Collateral shall not, directly or indirectly, be used to pay expenses of the Debtors or otherwise disbursed except for: (a) those expenses, payments, and/or disbursements that are set forth in the Budget and expressly permitted or under this Interim Order; and (b) any other expenses or payments authorized by the Court; provided that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clauses (a) through (b) and shall not affect the right of the Post-Petition Lender to object to the allowance and payment of such amounts.

8. The automatic stay extant under Bankruptcy Code section 362(a) shall be, and it hereby is, modified to the extent necessary to permit the Post-Petition Lender to retrieve, collect,

and apply payments and proceeds in respect of the Post-Petition Collateral in accordance with the terms and provisions of this Interim Order. In addition, the automatic stay of section 362(a) is modified to permit the Prepetition Lender to retrieve and collect and apply payments and proceeds of Prepetition Collateral pursuant to section 552 of the Bankruptcy Code in accordance with the terms and provisions of the Prepetition Lenders' loan documents.

9. Notwithstanding anything herein, the Debtors shall no longer, pursuant to this Interim Order or otherwise, be authorized to borrow funds hereunder or to use any proceeds of the Post-Petition Loans already received (and any obligation of the Post-Petition Lender to make loans or advances hereunder shall be terminated) upon the earliest to occur of any of the following events (any such event shall be referred to as a "Termination Event" and the date of any such event shall be referred to as the "Termination Date"):

(a) material non-compliance by any Debtors with any of the terms or provisions of the Budget (including the Debtors' failure to comply with the Variance) or this Interim Order;

(b) any default or event of default under the Post-Petition Loan Agreement;

(c) the Maturity Date (as defined below).

10. All obligations and commitments of the Post-Petition Lender under the Post-Petition Loan Agreement and/or this Interim Order, shall terminate at the earliest of the following (the "Maturity Date"): (i) February 18, 2011; and (ii) the entry of an order by this Court approving any motion by the Debtors to obtain financing pursuant to section 364 of the Bankruptcy Code or otherwise from any party other than the Post-Petition Lender.

11. Three business days after the occurrence of a Termination Event under this Interim Order, and after providing written notice to counsel for any Committee (as hereinafter

9

defined), the Office of the United States Trustee and counsel to other known holders of liens on the Prepetition Collateral, the Post-Petition Lender, and any Prepetition Lender, shall have the right, to seek expedited relief from the automatic stay extant pursuant to section 362 of the Bankruptcy Code to exercise the rights granted them under the Post-Petition Loan Agreement and this Interim Order.  Upon occurrence of a Termination Event, Pre-Petition Lenders may likewise, and in the same manner, seek expedited stay relief.

12. The Post-Petition Lender shall be entitled to all of the benefits of section 364(e) of the Bankruptcy Code for all post-petition advances made to the Debtors.

13. The Debtors shall execute and deliver to the Post-Petition Lender all such agreements, financing statements, instruments and other documents as the Post-Petition Lender may reasonably request to evidence, confirm, validate, or perfect the liens granted pursuant hereto.  Notwithstanding the foregoing, any terms or provisions of the Post-Petition Loan Agreement that would, in effect or application restrict, inhibit, prohibit or limit the Debtors' course of action, in connection with any sale or plan alternatives, shall not be enforceable.

14. The Debtors shall permit representatives, agents, and/or employees of the Post-Petition Lender, and the Prepetition Lenders, to have reasonable access to its premises and its records during normal business hours (without unreasonable interference with the proper operation of the Debtors' business) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

15. All liens granted herein to secure repayment of the Post-Petition Loans shall, pursuant to this Interim Order be, and they hereby are, deemed perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if the Post-Petition Lender shall, in its sole discretion, chooses to file such mortgages, financing statements,

notices of liens and security interests, and/or other similar documents, all such mortgages, financing statements, and/or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby vacated to effect such filings.

16. The provisions of this Interim Order shall be binding upon and inure to the benefit of the Prepetition Lender, the Post-Petition Lender, and the Debtors and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the properties of the estate of the Debtor). Notwithstanding any other provision hereof, the grant of adequate protection to RFA pursuant hereto is without prejudice to RFA's right to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.

17. In accordance with section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated by this Interim Order and the Post-Petition Loan Agreement, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment, or vacation shall affect the validity and enforceability of any lien or priority authorized or created hereby. Notwithstanding any such modification, amendment, or vacation, any claim or lien granted to the Post-Petition Lender hereunder arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Interim Order, and the Post-Petition Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted herein, with respect to any such claim.

18. The Debtors are authorized to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, mortgages, and financing statements) and to pay fees and expenses which may be required or necessary for the Debtors' performance hereunder.

19. In the event there are any inconsistencies between the provisions of the Post-Petition Loan Agreement and this Order, the provisions of this Order shall control.

20. This Court shall conduct a further hearing on the Motion on February 9, 2011 at 1:00 p.m. prevailing Orlando time. The Debtors and the Prepetition Lenders are authorized to conduct reasonable oral and written discovery with respect to the issues raised in the Motion prior to the hearing on February 9, 2011. Nothing herein is intended to, nor shall be construed to, limit the person or entities from which discovery, including depositions, may be sought or taken.

21. The Debtors shall provide the Pre-Petition Lenders any and all financial reports, financial statements and/or other financial or reporting information required to be provided to, or which is otherwise provided to, the Post-Petition Lender as and when so provided, and shall, if different, provide to the Pre-Petition Lender such financial reports other operating and financial information as may otherwise be required under the Pre-Petition Loan Documents.

22. Subject to the terms of any binding existing, contractual agreement between RFA and the Debtors regarding any of the unsold inventory, if any, the Debtors shall deposit into a segregated account the gross revenues from the rental or other use of any and all unsold inventory and with respect to which RFA holds a lien or security interest (the "<u>RFA Rental Account</u>"). On or before the last business day of each calendar month, the Debtors shall wire transfer the balance in the RFA Rental Account to RFA, less an agreed cost reimbursement to the

Debtors for the expense incurred in generating such rental income of 40% thereof (together with an accounting with respect thereto). Such reimbursement shall be in lieu of, and to the exclusion of, any other cost, expense or other claim to the RFA Rental Income by the Debtors or their bankruptcy estates, including without limitation, pursuant to Section 506(c) of the Bankruptcy Code or expense. Other than as expressly set forth herein, no other disbursement whatsoever shall be made from the Rental Account.

23. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. There is no just reason to delay enforcement or appeal of this Interim Order.

24. The authority granted hereunder shall continue until February 9, 2011.

25. A FINAL HEARING ON THE MOTION IS SCHEDULED FOR FEBRUARY 9, 2011 AT 1:00 P.M. BEFORE THE HONORABLE KAREN S. JENNEMANN IN COURTROOM B, U.S. BANKRUPTCY COURT, 135 W. CENTRAL BOULEVARD, ORLANDO, FLORIDA.

DONE and ORDERED on December 29, 2010.

_/s/ Karen S. Jennemann_

_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

13

103656260.1

Copies furnished to:

Debtors: Tempus Resorts International, Ltd., Tempus Resorts International, Ltd., Tempus Palms International, Ltd., Tempus Golf Development, LLC, Tempus Select, LLC, Backstage Myrtle Beach, LLC, Tempus Resorts Management, Ltd., Tempus Resorts Realty, LLC, Tempus International Marketing Enterprises, Ltd. and Time Retail, LLC, c/o Roger Farwell, CEO, Tempus Resorts International, Ltd., 7380 Sand Lake Road, Suite 600, Orlando, FL 32819, Orlando, FL 32819;

Counsel for Debtors: Elizabeth A. Green, Esq., Baker & Hostetler LLP, 200 S. Orange Ave., SunTrust Center, Suite 2300, P.O. Box 112 (32802-0112), Orlando, Florida 32801-3432;

Resort Finance America, LLC, c/o Centerbridge Partners, LLC, 375 Park Avenue, 12th Floor, New York 10152;

Andrew M. Brumby, Esq., Shutts & Bowen, LLP, P.O. Box 4956, Orlando, Florida 32802-4956 (a/f Resort Finance American, LLC);

Matthew A. Feldman, Esq., Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (a/f Resort Finance American, LLC);

Textron Financial Corporation, c/o Steven Fox, Esq., Epstein, Becker & Green, 250 Park Ave., New York, NY 10177 (a/f Textron Financial Corporation);

Denise Dell-Powell, Esq., Burr and Forman LLP, 450 S. Orange Avenue, Suite 200, Orlando, Florida 32801 (a/f Textron Financial Corporation);

Peter A. Siddiqui, Esq., Katten, Muchin Rosenman, LLP, 525 W. Monroe Street, Chicago, Illinois 60661;

William Lambert Trust, c/o Allen C.D. Scott, Scott Legal Associates, P.A., St. Augustine, Florida 32084 (a/f William Lambert Trust);

U.S. Trustee, 135 West Central Boulevard, Suite 620, Orlando, Florida 32801; and

Local Rule 1007-2 Parties-in-Interest List.

103656260.1

**Tempus Resorts International**
**Weekly DIP Budget**

| | 363 Wk 1 Ended 11/28/10 | 363 Wk 2 Ended 12/05/10 | 363 Wk 3 Ended 12/12/10 | 363 Wk 4 Ended 12/19/10 | 363 Wk 5 Ended 12/26/10 | 363 Wk 6 Ended 01/02/11 | 363 Wk 7 Ended 01/09/11 |
|---|---|---|---|---|---|---|---|
| I. Beginning Cash Book Balance | $ - | $ 483,940 | $ 390,153 | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 |
| II. Cash Inflows: | | | | | | | |
| Resort Cash Inflow | | | | 62,881 | 41,489 | 91,026 | 27,066 |
| Golf Course Cash Inflow | | 24,211 | 33,206 | 18,862 | 23,107 | 32,218 | 23,356 |
| Ticket Sales, Sale of Tours & Other Marketing Revenues | | 190,689 | 84,985 | 121,270 | 90,115 | 148,513 | 228,094 |
| Other Operating Revenue | | 2,621 | 20,221 | 20,221 | 20,221 | 20,221 | 15,646 |
| Subtotal Revenue Related Cash Inflows | | 217,521 | 138,412 | 223,234 | 174,932 | 291,979 | 294,162 |
| DIP Financing Draws | 735,000 | 700,000 | 445,293 | 1,158,430 | 358,745 | 333,562 | 382,565 |
| Total Cash Inflows | 735,000 | 917,521 | 583,705 | 1,381,664 | 533,677 | 625,541 | 676,727 |
| III. Expense Related Cash Outflows: | | | | | | | |
| III-A) Payroll: | | | | | | | |
| Sales & Marketing | 2,750 | 283,891 | | 165,440 | 6,910 | 200,960 | |
| Resort | | 201,884 | | 206,384 | | 206,384 | |
| G&A | | 269,948 | | 284,965 | | 247,287 | |
| Subtotal Payroll | 2,750 | 755,723 | | 656,788 | 6,910 | 654,631 | |
| III-B) Sales & Marketing Related: | | | | | | | |
| Location & Billboard Rents | | | 86,000 | | | | 63,500 |
| Premiums/Tickets | 30,000 | 63,072 | 30,895 | 283,915 | 105,683 | 90,851 | 121,376 |
| Supplies | | | 510 | 170 | 170 | 170 | 160 |
| Broker Payroll - Marketing | | | 2,000 | 3,000 | 23,250 | 5,000 | |
| Room Nights - Marketing | | | 7,500 | 2,500 | 2,500 | 2,500 | 2,277 |
| OPC Credit Score Fees | | | 439 | | | | 3,500 |
| Interval International Fees | | | 550 | 550 | 550 | 550 | 523 |
| Transportation | | | 2,221 | 1,257 | 1,683 | 1,141 | 756 |
| Taxes, Licenses and Fees | | | | | 5,695 | | |
| Utilities | | | 5,180 | | | | |
| Sales & Marketing-Other | | | 7,725 | 2,110 | 3,610 | 2,110 | 2,959 |
| Subtotal Sales & Marketing Related | 30,000 | 63,072 | 143,020 | 293,502 | 143,140 | 102,322 | 195,050 |
| III-C) Resort Related: | | | | | | | |
| Advertising & Promotions | | | 5,446 | 1,815 | 1,815 | 1,815 | 10,402 |
| Operational Leases | | | 25,868 | | 624 | | |
| Computer Maintenance/Software | | | 4,945 | | | | |
| Professional Services - Security & Fire Alarms | | | 7,238 | | | | 2,568 |
| Food & Beverage | | 7,609 | 15,298 | 15,298 | 25,298 | 25,298 | 12,496 |
| Repairs & Maintenance | | 776 | 17,316 | 17,316 | 4,567 | 4,567 | 19,056 |
| Cleaning Services | | | 3,369 | 3,369 | 3,369 | 3,369 | 4,216 |
| Landscaping Services | | | | 12,335 | | | |
| Storage Leases | | | | 3,883 | | | |
| Uniforms | | | 850 | 850 | 850 | 850 | 1,701 |
| Transportation | | 4,000 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 |
| Utilities | 21,681 | 56,222 | | 76,633 | 27,573 | | |
| Taxes, Licenses and Fees | | | 83,519 | | | | 30 |
| Golf Course Maintenance | | | | | | | 83,519 |
| Pro Shop Inventory | | 59 | 8,414 | | 22,096 | | 9,767 |
| Dunes Village HOA Fees | | | | 4,330 | | | |
| Printing | | | | | | | 776 |
| Supplies | | 7,113 | 4,300 | 4,300 | 4,300 | 4,300 | 15,000 |
| Resort-Other | | 16,000 | 2,996 | 2,996 | 2,996 | 2,996 | 7,763 |
| Subtotal Resort Related | 21,681 | 91,779 | 181,357 | 144,925 | 95,287 | 44,995 | 169,092 |



Tempus Resorts International
Weekly DIP Budget

| | 363 Wk 1 Ended 11/28/10 | 363 Wk 2 Ended 12/05/10 | 363 Wk 3 Ended 12/12/10 | 363 Wk 4 Ended 12/19/10 | 363 Wk 5 Ended 12/26/10 | 363 Wk 6 Ended 01/02/11 | 363 Wk 7 Ended 01/09/11 |
|---|---|---|---|---|---|---|---|
| III-D) G&A Related: | | | | | | | |
| Health Insurance | - | - | - | - | 150,000 | - | - |
| 401k Contributions | 11,629 | - | 15,000 | - | 15,000 | - | 16,159 |
| Workers Compensation Insurance | - | - | - | 19,024 | - | - | - |
| Life Insurance | - | - | 8,500 | 7,000 | - | - | - |
| Payroll Service Fees | - | - | 11,900 | - | 5,200 | - | 3,761 |
| Office Rents | - | 85,660 | - | - | - | - | 119,924 |
| Business Insurance | - | - | - | - | 4,439 | - | 4,439 |
| Operational Leases | - | 14,903 | - | 7,776 | 846 | - | 14,903 |
| Professional Services - Audit & Tax | - | - | - | - | - | - | - |
| Professional Services - Other | - | 250 | - | - | 7,000 | - | - |
| Postage & Shipping | - | - | 1,050 | 19,550 | 1,050 | 1,050 | 980 |
| Repairs & Maintenance | - | - | - | - | 1,000 | - | - |
| Utilities | - | - | 33,309 | 237,040 | 50,496 | - | - |
| Taxes, Licenses and Fees | - | - | - | 500 | - | - | - |
| Printing | - | - | - | 11,236 | - | - | 1,561 |
| Supplies | - | - | 1,000 | 1,000 | 1,000 | 1,000 | 650 |
| Credit Card Merchant & Processing Fees | - | 149,709 | 350,000 | 150,000 | - | - | 133,615 |
| Mortgage Servicing & Credit Scoring | - | 71 | - | 24,781 | - | 24,781 | - |
| G & A - Other | - | - | 17,308 | 19,708 | 27,308 | 22,508 | 16,592 |
| Subtotal: G&A Related | 11,629 | 250,593 | 438,067 | 497,616 | 263,340 | 49,339 | 312,584 |
| III-D) Less Reimbursement from HOA for Management Fee & Payments Made on Its Behalf | - | 149,858 | - | 244,500 | - | 244,500 | - |
| Subtotal Expense Related Cash Outflows | 66,060 | 1,011,308 | 762,445 | 1,348,331 | 508,677 | 606,788 | 676,727 |
| IV. Legal/Professional/Court Fees Related to Reorg Process: | | | | | | | |
| Debtor Counsel | - | - | - | - | - | - | - |
| DIP Lender Counsel | 25,000 | - | - | - | 25,000 | - | - |
| Unsecured Creditors Committee Counsel | - | - | - | 33,333 | - | - | - |
| US Trustee | - | - | - | - | - | - | - |
| Restructuring Specialist | - | - | 30,000 | - | - | - | - |
| PR Firm | - | - | - | - | - | - | - |
| Subtotal: Legal/Professional/Court Fees | 25,000 | - | 30,000 | 33,333 | 25,000 | - | - |
| V. DIP Debt Service | | | | | | | |
| DIP Commitment Fee | 160,000 | - | - | - | - | - | - |
| DIP Interest | - | - | 1,413 | - | - | 18,753 | - |
| DIP Debt Service Paid by Tempus | 160,000 | - | 1,413 | - | - | 18,753 | - |
| VI. Working Capital Cash Inflows / (Outflows) Related to Processing Customer Mortgage Payments (Note 1) | - | - | - | - | - | - | - |
| VII. Ending Cash Book Balance | $ 483,940 | $ 390,153 | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 |
| VIII. Supplemental - Outstanding DIP Loan Amount | $ 735,000 | $ 1,435,000 | $ 1,880,293 | $ 3,038,723 | $ 3,397,468 | $ 3,731,029 | $ 4,113,595 |

Tempus Resorts International
Weekly DIP Budget

| | 363 Wk 8 Ended 01/16/11 | 363 Wk 9 Ended 01/23/11 | 363 Wk 10 Ended 01/30/11 | 363 Wk 11 Ended 02/06/11 | 363 Wk 12 Ended 02/13/11 | 363 Wk 13 Ended 02/20/11 |
|---|---:|---:|---:|---:|---:|---:|
| I. Beginning Cash Book Balance | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 |
| II. Cash Inflows: | | | | | | |
| Resort Cash Inflow | 41,925 | 31,892 | 41,479 | 50,544 | 55,146 | 106,405 |
| Golf Course Cash Inflow | 50,806 | 47,210 | 62,958 | 44,555 | 40,568 | 64,099 |
| Ticket Sales, Sale of Tours & Other Marketing Revenues | 386,758 | 257,291 | 125,046 | 123,310 | 107,924 | 91,946 |
| Other Operating Revenue | 15,646 | 15,646 | 15,646 | 15,646 | 9,550 | 9,550 |
| Subtotal Revenue Related Cash Inflows | 495,136 | 352,039 | 245,129 | 234,055 | 213,189 | 272,000 |
| DIP Financing Draws | 261,196 | 520,926 | 270,737 | 262,447 | 281,612 | 381,797 |
| Total Cash Inflows | 756,331 | 872,965 | 515,866 | 496,502 | 494,801 | 653,797 |
| III. Expense Related Cash Outflows: | | | | | | |
| III-A) Payroll: | | | | | | |
| Sales & Marketing | 162,023 | 13,761 | 195,035 | - | 172,004 | 12,410 |
| Resort | 206,384 | - | 206,384 | - | 206,384 | - |
| G&A | 284,965 | - | 247,287 | - | 295,287 | - |
| Subtotal Payroll | 653,371 | 13,761 | 648,706 | - | 673,675 | 12,410 |
| III-B) Sales & Marketing Related: | | | | | | |
| Location & Billboard Rents | - | - | - | 63,500 | - | - |
| Premiums/Tickets | 145,197 | 316,175 | 220,654 | 103,004 | 96,326 | 89,169 |
| Supplies | 160 | 160 | 160 | 160 | 160 | 160 |
| Broker Payroll - Marketing | - | - | - | - | - | - |
| Room Nights - Marketing | 2,277 | 2,277 | 2,277 | 2,277 | 7,206 | 7,206 |
| OPC Credit Score Fees | - | - | - | 1,852 | - | - |
| Interval International Fees | 523 | 523 | 523 | 523 | 557 | 557 |
| Transportation | 703 | 885 | 620 | 831 | 896 | 1,391 |
| Taxes, Licenses and Fees | - | 5,858 | - | - | - | 5,900 |
| Utilities | 8,600 | - | - | - | - | 7,500 |
| Sales & Marketing-Other | 3,959 | 4,459 | 3,959 | 2,959 | 2,430 | 2,430 |
| Subtotal Sales & Marketing Related | 161,418 | 330,337 | 228,192 | 175,106 | 107,575 | 114,312 |
| III-C) Resort Related: | | | | | | |
| Advertising & Promotions | 29,567 | 4,157 | 4,157 | 4,157 | 4,157 | 4,157 |
| Operational Leases | 25,245 | - | 624 | - | 25,245 | - |
| Computer Maintenance/Software | - | 2,637 | - | - | - | - |
| Professional Services - Security & Fire Alarms | - | - | - | - | - | - |
| Food & Beverage | 2,568 | 2,568 | 2,568 | 2,568 | 446 | 446 |
| Repairs & Maintenance | 12,496 | 12,496 | 12,496 | 12,496 | 14,423 | 14,423 |
| Cleaning Services | 19,056 | 19,056 | 19,056 | 19,056 | 14,827 | 14,827 |
| Landscaping Services | 4,216 | 4,216 | 4,216 | 4,216 | 2,985 | 2,985 |
| Storage Leases | 14,500 | - | - | - | 14,500 | - |
| Uniforms | - | 2,674 | - | - | - | - |
| Transportation | 1,701 | 1,701 | 1,701 | 1,701 | 237 | 237 |
| Utilities | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 |
| Taxes, Licenses and Fees | 87,000 | - | - | - | - | 80,000 |
| Golf Course Maintenance | 97,653 | 73,362 | - | - | 83,519 | 123,602 |
| Pro Shop Inventory | - | - | - | - | 225 | - |
| Dunes Village HOA Fees | 13,087 | 8,411 | 1,528 | 2,956 | 11,203 | - |
| Printing | - | 22,096 | - | - | - | 22,096 |
| Supplies | 4,714 | 469 | 59 | 2,967 | 662 | 2,632 |
| Resort-Other | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| | 7,763 | 7,763 | 7,763 | 7,763 | 4,190 | 4,190 |
| Subtotal Resort Related | 336,365 | 178,407 | 70,966 | 74,679 | 193,418 | 286,397 |

Tempus Resorts International
Weekly DIP Budget

| | 363 Wk 8 Ended 01/16/11 | 363 Wk 9 Ended 01/23/11 | 363 Wk 10 Ended 01/30/11 | 363 Wk 11 Ended 02/06/11 | 363 Wk 12 Ended 02/13/11 | 363 Wk 13 Ended 02/20/11 |
|---|---|---|---|---|---|---|
| **III-D) G&A Related:** | | | | | | |
| Health Insurance | - | 150,000 | - | - | - | - |
| 401k Contributions | - | 16,159 | - | 16,159 | - | 16,159 |
| Workers Compensation Insurance | - | 19,024 | - | - | - | 19,024 |
| Life Insurance | 7,000 | - | - | - | 7,000 | - |
| Payroll Service Fees | - | 2,700 | 6,500 | 2,700 | - | 2,700 |
| Office Rents | - | - | - | 85,660 | - | - |
| Business Insurance | - | - | 4,439 | - | - | - |
| Operational Leases | 7,776 | - | 846 | 14,903 | - | 7,776 |
| Professional Services - Audit & Tax | - | - | - | - | - | - |
| Professional Services - Other | 7,000 | - | - | 7,000 | - | - |
| Postage & Shipping | 980 | 980 | 980 | 980 | 1,222 | 1,222 |
| Repairs & Maintenance | - | 1,000 | - | - | - | 1,000 |
| Utilities | 75,000 | - | - | - | - | 61,000 |
| Taxes, Licenses and Fees | - | 241 | - | - | 488 | 112 |
| Printing | 6,060 | - | - | - | - | - |
| Supplies | 650 | 650 | 650 | 650 | 650 | 650 |
| Credit Card Merchant & Processing Fees | - | - | - | - | - | - |
| Mortgage Servicing & Credit Scoring | - | 24,781 | 1,683 | 102,073 | - | 24,781 |
| G & A - Other | 18,992 | 26,592 | 16,592 | 16,592 | 18,963 | 16,563 |
| Subtotal G&A Related | 123,459 | 242,127 | 31,690 | 246,717 | 28,323 | 150,987 |
| III-D) Less Reimbursement from HOA for Management Fees & Payments Made on its Behalf | 568,282 | | 496,603 | | 508,190 | |
| **Subtotal Expense Related Cash Outflows** | 706,331 | 764,632 | 482,952 | 496,502 | 494,801 | 564,106 |
| **IV. Legal/Professional/Court Fees Related to Reorg Process:** | | | | | | |
| Debtor Counsel | - | 50,000 | - | - | - | - |
| DIP Lender Counsel | - | 25,000 | - | - | - | - |
| Unsecured Creditors Committee Counsel | - | 33,333 | - | - | - | 33,333 |
| US Trustee | 50,000 | - | - | - | - | 25,000 |
| Restructuring Specialist | - | - | - | - | - | - |
| PR Firm | - | - | - | - | - | - |
| Subtotal Legal/Professional/Court Fees | 50,000 | 108,333 | - | - | - | 58,333 |
| **V. DIP Debt Service** | | | | | | |
| DIP Commitment Fee | - | - | - | - | - | - |
| DIP Interest | - | - | 32,914 | - | - | 31,357 |
| DIP Debt Service Paid by Tempus | - | - | 32,914 | - | - | 31,357 |
| **VI. Working Capital Cash Inflows / (Outflows) Related to Processing Customer Mortgage Payments (Note 1)** | - | - | - | - | - | - |
| **VII. Ending Cash Book Balance** | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 | $ 180,000 |
| **VIII. Supplemental - Outstanding DIP Loan Amount** | $ 4,374,790 | $ 4,895,716 | $ 5,166,453 | $ 5,428,900 | $ 5,710,512 | $ 6,092,309 |