UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                    CASE NO. 6:10-bk-20709-KSJ

TEMPUS RESORTS                            CHAPTER 11
INTERNATIONAL, LTD., *et al.*
                                          Jointly-administered with Cases No.
          Debtors.                        6:10-bk-20712-KSJ; 6:10-bk-20714-KSJ;
                                          6-10-bk-20715-KSJ; 6-10-bk-20716-KSJ;
                                          6:10-bk-20717-KSJ; 6:10-bk-20718-KSJ;
_____/         6:10-bk-20719-KSJ; and 6:10-bk-20720-KSJ

JOINT PLAN OF REORGANIZATION
SUBMITTED BY TEMPUS RESORTS INTERNATIONAL, LTD., TEMPUS PALMS
INTERNATIONAL, LTD., TEMPUS GOLF DEVELOPMENT, LLC, TEMPUS
SELECT, LLC, BACKSTAGE MYRTLE BEACH, LLC, TEMPUS RESORTS
MANAGEMENT, LTD., TEMPUS RESORTS REALTY, LLC, TEMPUS
<u>INTERNATIONAL MARKETING ENTERPRISES, LTD., TIME RETAIL, LLC</u>

COUNSEL FOR DEBTORS

JIMMY D. PARRISH. ESQ.
ELIZABETH GREEN, ESQ.
BAKER & HOSTETLER LLP
200 S. ORANGE AVE.
SUNTRUST CENTER, SUITE 2300
ORLANDO, FLORIDA  32801-3432

December 31, 2010

In re:                                                     CASE NO. 6:10-bk-20709-KSJ

**TEMPUS RESORTS**                          CHAPTER 11
**INTERNATIONAL, LTD.,** *et al.*

                                                            **Jointly-administered with Cases No.**
**Debtors.**                                    **6:10-bk-20712-KSJ; 6:10-bk-20714-KSJ;**
                                                            **6-10-bk-20715-KSJ; 6:10-bk-20716-KSJ;**
                                                            **6:10-bk-20717-KSJ; 6:10-bk-20718-KSJ;**
_____/          **6:10-bk-20719-KSJ; and 6:10-bk-20720-KSJ**


**JOINT PLAN OF REORGANIZATION**
**SUBMITTED BY TEMPUS RESORTS INTERNATIONAL, LTD., TEMPUS PALMS**
**INTERNATIONAL, LTD., TEMPUS GOLF DEVELOPMENT, LLC, TEMPUS**
**SELECT, LLC, BACKSTAGE MYRTLE BEACH, LLC, TEMPUS RESORTS**
**MANAGEMENT, LTD., TEMPUS RESORTS REALTY, LLC, TEMPUS**
**INTERNATIONAL MARKETING ENTERPRISES, LTD., TIME RETAIL, LLC**


**TEMPUS RESORTS INTERNATIONAL, LTD., TEMPUS PALMS INTERNATIONAL, LTD., TEMPUS GOLF DEVELOPMENT, LLC, TEMPUS SELECT, LLC, BACKSTAGE MYRTLE BEACH, LLC, TEMPUS RESORTS MANAGEMENT, LTD., TEMPUS RESORTS REALTY, LLC, TEMPUS INTERNATIONAL MARKETING ENTERPRISES, LTD., TIME RETAIL, LLC** (**collectively the "Debtors"**), hereby propose the following Joint Plan of Reorganization (the "Plan"), pursuant to Chapter 11 of the Code, 11 U.S.C. §101, *et seq.*

## ARTICLE I. - DEFINITIONS.

For the purpose of the Plan, the following terms will have the meanings set forth below:

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Code and of a kind referred to in Section 507(a)(1) of the Code, including without limitation, the actual, necessary costs, and expenses incurred after the

commencement of the Bankruptcy Case, of preserving Debtors' estates and operating the business of the Debtors, including wages, salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Code. and all fees and charges assessed against the Bankruptcy Estate under Chapter 123 of Title 28, United States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court**.**

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed, pursuant to Section 1111(a) of the Code, by virtue of such Claim having been scheduled in the lists of Creditors prepared and filed by Debtors with the Bankruptcy Court, pursuant to Section 521(1) and Rule 1007(b), and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or

proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

**Allowed Interest** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3003 or a Final Order; and (b) as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3007 or any Order of the Bankruptcy Court.

**Allowed Priority Tax Claim** shall mean a Priority Claim, pursuant to Code Section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**Backstage** shall mean Backstage Myrtle Beach, LLC.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Cases** shall mean these jointly administered bankruptcy cases of the Debtors, which are pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division pursuant to Chapter 11 of the Code.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which Debtors' Bankruptcy Cases are pending, and any Bankruptcy Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Estate** shall mean the collective estate, created pursuant to Section 541 of the Code, by the commencement of the Debtors' Bankruptcy Cases and shall include all property of the estate as defined in Section 541 of the Code.

**Bar Date** shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in the Bankruptcy Cases.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including but not limited to, checks, bank deposits, or other similar items.

**Causes of Action** shall mean the actions and causes of action (and the proceeds thereof), whether or not commenced as of the date hereof, all proceedings, commenced or to be commenced pursuant to Bankruptcy Code Sections 105 and 502 and Sections 544-554 (or

equivalent provisions of applicable non-bankruptcy laws). Causes of Action shall include the RFA Fraudulent Transfer Lawsuit and the RFA Preference Lawsuit.

**Claim** shall mean any right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured. unmatured, disputed, undisputed, secured, or unsecured.

**Class** shall mean any class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.*, shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. 101, *et seq.*, and any amendments thereof.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code and which is in form and content acceptable to the Debtors.

**Creditor** shall have the same meaning as set forth in Section 101(1) of the Code.

**Debt** shall have the same meaning as set forth in Section 101(12) of the Code.

**Debtors** shall mean Tempus Resorts International, Ltd., Tempus Palms International, ltd., Tempus Golf Development, LLC, Tempus Select, LLC, Backstage Myrtle Beach, LLC, Tempus Resorts Management, Ltd., Tempus Resorts Realty, LLC, Tempus International Marketing Enterprises, Ltd., Time Retail, LLC.

**DIP Loan** shall mean that Post Petition Term Credit and Security Agreement dated November 23, 2010 by and between TAC and the Debtors.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court, pursuant to Section 1125 of the Code, together with any amendments or modifications thereto.

**Disallowed Claim** shall mean a Claim which has been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Claim** shall mean a Claim against any of the Debtors which is subject to a pending objection, but has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Unsecured Claim** shall mean any Unsecured Claim against any of the Debtors which is subject to a pending objection, but has not been disallowed by a Final Order of the Bankruptcy Court.

**Distribution** shall mean the distribution to the Holders of Allowed Claims.

**Dunes Village** shall mean Dunes Village Resort on the north part of Myrtle Beach.

**Effective Date** shall mean a date within thirty (30) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided, however,* that the Effective Date shall not occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 30th day

after the entry of the Confirmation Order provided that the conditions to effectiveness have been met.

**Equity Interests** shall mean any and all issued or authorized common stock, stock options, membership interests, and warrants in the Debtors.

**Estate Assets** shall mean all the assets, property, and cash of the Debtors, as defined in Section 541 of the Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtors prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including without limitation. the Causes of Action.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Debtors, if an appeal is filed and no stay has been entered.

**GMAC** shall mean Residential Funding Corporation, a subsidiary of General Motors Acceptance Corporation and GMAC Commercial Finance, LLC collectively.

**Holder** shall mean the legal or beneficial Holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type.

**Houlihan** shall mean Houlihan Lokey Howard & Zukin Capital, Inc.

**HRP** shall mean HRP Myrtle Beach Operations, LLC.

**HRP Agreement** shall mean that agreement with HRP related to the Debtors becoming the "official" vacation ownership company for Hard Rock Park when it opens.

**Hard Rock Park** shall mean shall mean a Hard Rock branded theme park under construction in Myrtle Beach, South Carolina.

**Impaired Class** shall mean any Class whose members are Holders of Claims or Interests, which are impaired within the meaning of Section 1124 of the Code.

**Insider** shall have the same meaning as set forth in Section 101(31) of the Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtors.

**Lantern** shall mean Lantern Asset Management, LLC.

**Lambert** shall mean William R. Lambert and Lucille H. Lambert, and William R. Lambert Trustee.

**Lambert Option Contract** shall mean that one year renewable option contract between Lambert and the Reorganized Debtor for Lambert to sell the Undeveloped Land back to Reorganized Debtor at a price and with terms to be agreed upon by the parties.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtors but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtors, Reorganized Debtor, or any other party with standing to bring such a challenge.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Mystic Dunes** shall mean Mystic Dunes Resort & Golf Club.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtors; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the Holders of Allowed Claims.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean November 19, 2010, the date on which the Debtors each filed a voluntary petition for relief under Chapter 11 of the Code.

**Plan** shall mean this Joint Chapter 11 Plan of Reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made by the Reorganized Debtor pursuant to the terms of the Plan including the payment of Nonordinary Course Administrative Claims.

**Pledged RFA Receivables** shall mean those receivables generated by Tempus International at the Mystic Dunes Resort and pledged to secure the RFA Receivables Loan.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Prime Rate** shall be the prime rate of interest as published in the *WALL STREET JOURNAL* on the Confirmation Date.

**Priority Claim** shall mean a Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority in payment under Section 507 of the Code.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Cases pursuant to an Order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable, pursuant to Section 1129(a)(4) of the Code.

**Priority Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under Section 507(a)(8) of the Code.

**Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

**Reorganized Debtors** shall mean the Debtors upon the Effective Date of the Plan.

**RFA** shall mean Resort Finance America, LLC, Lantern Asset Management, LLC, and/or Vacation Finance America, LLC.

**RFA Development Collateral** shall mean the Debtors' inventory of unsold timeshare intervals, golf course, and other resort-related improvements and property located at the Debtors' Mystic Dunes Resort & Golf Club that is subject to a lien in connection with the RFA Development Loan.

**RFA Development Loan** shall mean that certain Loan Agreement and Promissory Note by and between GMAC and the Debtors dated October 28, 2004, which was subsequently assigned to RFA and secured by a first priority lien on the RFA Development Collateral.

**RFA Fraudulent Transfer Lawsuit** shall mean that fraudulent transfer lawsuit styled *Tempus Palms International, Ltd. v. Resort Finance America, LLC* (Adv. Pro.6:10-ap-00314-

KSJ) ("RFA Fraudulent Transfer Lawsuit") which seeks to avoid the Debtors' conveyance of certain notes receivable to RFA less than two weeks prior to the Petition Date as a constructive fraudulent transfer because the Debtors received no consideration for the transfer.

**RFA Preference Lawsuit** shall mean that preference lawsuit styled *Tempus Resorts Management, Ltd. v. GMAC Commercial Finance, LLC, et al.* (Adv. Pro. 6:10-ap-00315-KSJ) which seeks to avoid as preference RFA's perfection of its lien on the Tempus Management's exclusive management agreement to manage the Debtors' Mystic Dunes Resort.

**RFA Receivables Loan** shall mean with that certain Loan Agreement and Promissory Note by and between GMAC and the Debtors dated October 24, 2008, which was subsequently assigned to RFA and secured by a first priority lien on the Pledged RFA Receivables.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure. as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Debtors or Reorganized Debtor shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as set forth in Section 101(51) of the Code**.**

**TAC** shall mean Tempus Acquisition, LLC, an affiliate of Diamond Resorts Corporation.

**Tempus Golf** shall mean Tempus Golf Development, LLC.

**Tempus International** shall mean Tempus Resorts International, Ltd.

**Tempus Management** shall mean Tempus Resorts Management, Ltd.

**Tempus Marketing** shall mean Tempus International Marketing Enterprises, Ltd.

**Tempus Palms** shall mean Tempus Palms International, Ltd.

**Tempus Realty** shall mean Tempus Resorts Realty, LLC.

**Tempus Select** shall mean Tempus Select, LLC.

**Textron or TFC** shall mean Textron Financial Corporation.

**Textron Inventory Collateral** shall mean Backstage's inventory of unsold timeshare intervals located at Dunes Village.

**Textron Inventory and Receivables Loan** shall mean that certain Receivables and Inventory Loan and Security Agreement dated November 5, 2008 by and between Textron and Backstage.

**Textron Receivables Collateral** shall mean all notes receivable generated by Backstage at Dunes Village and pledged to Textron in connection with the Textron Inventory and Receivables Loan.

**TIME** shall mean TIME Retail, LLC.

**Unclaimed Property** shall mean any Cash, or any other Property of the Debtors or Reorganized Debtor unclaimed for a period of six (6) months after any Distribution.

**Undeveloped Land** shall mean undeveloped parcels H-2, J-1, J-2, J-3, E, F, D, G-2, I-2, I-2a, I-2b, I-2c, and I-2d located at 7900 Mystic Dunes Lane, Celebration, FL 34747.

**Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

**Unsecured Creditor** shall mean a Creditor holding an Allowed Unsecured Claim.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II. - CLASSIFICATION OF CLAIMS AND INTERESTS.

All Claims and Interests treated under Articles III-VII of the Plan are divided into the following classes, which shall be mutually exclusive:

A.     Class 1 — TAC (DIP Loan Obligations).

Class 1 consists of the Allowed Secured Claim of TAC in connection with the DIP Loan.  The Class 1 Claim is secured by the DIP Loan Collateral.

B.     Class 2 — RFA (Acquisition and Development Loan Obligations).

Class 2 consists of the Allowed Secured Claim of RFA in connection with the RFA Development Loan.  The Class 2 Claim is secured by the RFA Development Collateral.

C.     Class 3 — RFA (Receivables Loan Obligations).

Class 3 consists of the Allowed Secured Claim of RFA in connection with the RFA Receivables Loan.  The Class 3 Claim is secured by the Pledged RFA Receivables.

D.     Class 4 — Textron (Receivables and Inventory Loan Obligations).

Class 4 consists of the Allowed Secured Claim of Textron in connection with the Textron Inventory and Receivables Loan.  The Class 4 Claim is secured by the Textron Inventory Collateral and the Textron Receivables Collateral.

E.     Class 5 — Lambert (Undeveloped Land Obligations).

Class 5 consists of the Allowed Secured Claim of Lambert in connection the Lambert Acquisition Loan.  The Class 5 Claim is secured by a mortgage on the Undeveloped Land.

F.     Class 6 — Unsecured Creditors.

Class 6 consists of the collective holders of Allowed Unsecured Claims against the Debtors.

G.     Class 7 — Equity Interests.

Class 7 consists of the collective Interests in the Debtors.

## ARTICLE III. - ADMINISTRATIVE EXPENSES.

A.     Administrative Claims.

1.     Nonordinary Course Administrative Claims.

Any Person, including any professional who has rendered services to Debtors during the course of the Bankruptcy Cases, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court Order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any Holder of a Nonordinary Course Administrative Expense Claim, other than such

a Holder engaged or employed by the Reorganized Debtor shall bar such a claimant from seeking recovery on such Claim.

2. <u>Administrative Expense Claims.</u>

Holders of all Allowed Administrative Expense Claims of the Debtor shall be paid in full on the Effective Date or in accordance with existing credit or repayment terms. Debtors' cash-on-hand, as of the Effective Date, shall be used to pay Allowed Administrative Expense Claims.

B. <u>Tax Claims.</u>

Except to the extent that the Holder and the Reorganized Debtor have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtor, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims will be paid over a period of five years from the Petition Date with interest at five percent (5%); the payments will be made quarterly. Payments will commence on the later of the first day of the first full quarter following the Effective Date or on the first day of the first full quarter following the date that the respective Priority Claim becomes an Allowed Claim. To the extent a Holder of an Allowed Priority Tax Claim holds lien rights, such Holder will retain those rights, but may not enforce such rights if the Reorganized Debtor is making payments to such Holder in accordance with the Plan.

## ARTICLE IV. - TREATMENT OF UNIMPAIRED CLASSES.

A. <u>Class 2 — RFA (Acquisition and Development Loan Obligations).</u>

Class 2 consists of the Allowed Secured Claim of RFA in connection with RFA Development Loan. The Allowed Secured Claim is estimated in the amount of $17,081,898.38 and is secured by a first priority lien on the RFA Development Collateral.

In full satisfaction of RFA's Allowed Class 2 Secured Claim, on the Effective Date, the Debtors shall pay RFA in Cash the full amount of the Allowed Class 2 Secured Claim. The Class 2 Claim of RFA is not impaired and, as such, RFA is not entitled to vote on the Plan.

## ARTICLE V. - TREATMENT OF IMPAIRED CLASSES OF CLAIMS.

A.    <u>Determination of Allowed Amounts.</u>

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, except as may otherwise be provided by Order of the Bankruptcy Court, the Debtors reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

B.    <u>Class 1 — TAC (DIP Loan Obligations).</u>

Class 1 consists of the Allowed Secured Claim of TAC in connection with the DIP Loan. The DIP Loan is estimated in the amount of $6,500,000 and is secured by a second priority lien on all of the Debtors' assets and a first priority lien on any assets not already encumbered.

In full and final satisfaction of TAC's Allowed Class 1 Secured Claim, on the Effective Date, all existing obligations under the DIP Loan shall be converted to new equity in

the Reorganized Debtor. The Class 1 Claim of TAC is impaired and, as such, TAC is entitled to vote on the Plan.

      C.      <u>Class 3 — RFA (Receivables Loan Obligations).</u>

Class 3 consists of the Allowed Secured Claim of RFA in connection with the RFA Receivables Loan. The Allowed Secured Claim is estimated in the amount of $96,298,435.45 and is secured by a first priority lien on the Pledged RFA Receivables.

In full satisfaction of RFA's Allowed Class 3 Secured Claim, on the Effective Date, the Debtors shall transfer the RFA Receivables to RFA or its designee free and clear of all liens, claims, and encumbrances as the indubitable equivalent of its Allowed Class 3 Claim. The Class 3 Claim of RFA is impaired and, as such, RFA is entitled to vote on the Plan.

      D.      <u>Class 4 — Textron (Receivables and Inventory Loan Obligations).</u>

Class 4 consists of the Allowed Secured Claim of Textron in connection with the Textron Inventory and Receivables Loan. The Allowed Secured Claim is estimated in the amount of $5,662,306.00 and is secured by a first priority lien on the Textron Inventory Collateral and the Textron Receivables Collateral.

In full satisfaction of Textron's Allowed Class 4 Secured Claim, on the Effective Date, the Reorganized Debtor shall transfer the Textron Receivables Collateral to Textron or its designee free and clear of all liens, claims, and encumbrances. Additionally, Textron shall retain its mortgages and liens on the Textron Inventory Collateral and be paid the full amount of its Allowed Secured Claim over time with interest as provided in that certain letter agreement dated December 22, 2010 by and between Textron and TAC and attached hereto as **Exhibit "A"**.

E.    Class 5 — Lambert (Undeveloped Land Obligations).

Class 5 consists of the Allowed Secured Claim of Lambert in connection with an acquisition loan for undeveloped parcels H-2, J-1, J-2, J-3, E, F, D, G-2, I-2, I-2a, I-2b, I-2c, and I-2d located at 7900 Mystic Dunes Lane, Celebration, FL 34747. The Allowed Secured Claim is estimated in the amount of $5,757,979.00 plus accrued interest and is secured by a first mortgage on the Undeveloped Land.

In full satisfaction of Lambert's Allowed Class 5 Secured Claim, on the Effective Date, Reorganized Debtors shall transfer the Undeveloped Land back to Lambert free and clear of all liens, claims, and encumbrances as the indubitable equivalent of Lambert's Allowed Class 5 Claim. Additionally, on the Effective Date, Lambert and Reorganized Debtor shall execute the Lambert Option Contract. Lambert and Reorganized Debtor shall mutually agree to the cash consideration to be paid by Reorganized Debtor for the Lambert Option Contract. The Class 5 Claim of Lambert is impaired and, as such, Lambert is entitled to vote on the Plan.

F.    Class 6 — Unsecured Creditors.

Class 6 consists of the collective holders of Allowed Unsecured Claims against the Debtors. In full and final satisfaction of each Allowed Unsecured Claim, each Holder of an Allowed Unsecured Claim shall be entitled to a pro rata share of the proceeds of the RFA Fraudulent Transfer Lawsuit. While recovery of any lawsuit is speculative, the Debtors estimate the total value of the RFA Fraudulent Transfer Lawsuit is $840,000. The Class 6 Claims of Unsecured Creditors are impaired and, as such, holders of Allowed Unsecured Claims are entitled to vote on the Plan.

G.    <u>Class 7 — Equity Interests.</u>

Class 7 consists of the collective Interests in the Debtors.  The Debtors' Interest will be cancelled on the Effective Date of the Plan.  Because the Class 7 Interests are being cancelled, they are deemed to reject the Plan and, as such, Holders of Allowed Interests in the Debtors are not entitled to vote on the Plan.

## ARTICLE VI. - UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

To the extent the Debtors reject any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim, pursuant to Section 365 of the Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be a Class 6 Claim. The Debtors shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, then such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date. The Plan also provides for the Bankruptcy Court to retain jurisdiction as to certain matters as stated in the Plan, including, without limitation, prosecution of all causes of action and objection to Claims.

## ARTICLE VII. - MEANS OF IMPLEMENTATION.

A.    Means of Implementation.

1.    Prosecution of the RFA Fraudulent Transfer Lawsuit.

The Plan provides that Holders of Allowed Unsecured Claims will be entitled to a pro rata share of any proceeds from the RFA Fraudulent Transfer Lawsuit.  The Debtors have filed and are currently prosecuting the RFA Fraudulent Transfer Lawsuit.  In the

event an Official Committee of Unsecured Creditors is appointed and retains counsel in these jointly administered cases, such counsel will substitute in and continue prosecuting the RFA Fraudulent Transfer lawsuit for the benefit of Holders of Allowed Unsecured Claims. In the event no committee is formed or such committee does not retain counsel, counsel for the Reorganized Debtor will prosecute the RFA Fraudulent Transfer Lawsuit.

B.     <u>Business Operations and Cash Flow.</u>

The Debtors will continue to operate their business after confirmation of the Plan. Debtors believe cash flow from the continued operation of their business will be sufficient to meet all required Plan Payments.

C.     <u>Funds Generated During Chapter 11.</u>

Funds generated from operations until the Effective Date will be used for operational expenses and Plan Payments; provided, however, to the extent such funds constitute RFA's collateral, such funds will not be used without RFA's consent or approval by the Court.

D.     <u>Substantive Consolidation of the Debtors.</u>

The Plan contemplates substantive consolidation of the Debtors to form the Reorganized Debtor. The Debtors believe that substantive consolidation of the Debtors will not prejudice any of the Debtors' creditors and will simplify the Debtors' accounting and obligations under the Plan.

E.     <u>Management and Control of Reorganized Debtor.</u>

1.     <u>General Partner.</u> Post confirmation, the operations of the Reorganized Debtor shall be overseen by its General Partner. The General Partner shall have all corporate authority vested in general partners under the applicable laws of the State of Florida including the power to appoint and terminate officers and to liquidate the Debtors and to wind up their

affairs, with all such powers to be exercised by a majority vote.

The initial General Partner shall be TAC and TAC shall continue to serve until either: (i) the Debtors cease to do business; or (ii) TAC resigns or is replaced in accordance with Florida law.

2.     Officers.

David F. Palmer shall be the President of the Reorganized Debtor and shall remain in that capacity until replaced by TAC. It has not yet been determined whether Mr. Palmer will earn a salary in connection with his employment with the Reorganized Debtor. In the event it is determined that Mr. Palmer will earn a salary in connection with his employment with Reorganized Debtor, the Debtors will provide notice of such salary within fourteen days prior to the Confirmation Hearing. Additionally, it is contemplated that several members of the Debtors' current executive team will be employed with the Reorganized Debtor. The Debtors will provide notice of the terms of such employment no later than fourteen days prior to the Confirmation Hearing.

F.     Stock in the Debtors After Confirmation.

After Confirmation, all equity interest in the Reorganized Debtor shall be vested in TAC in full satisfaction of the DIP Loan obligations.

G.     Additional Provisions.

1.     Procedures For Resolving Disputed Claims.

a.     Prosecution of Objections to Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, Debtors and the Reorganized Debtor shall have the exclusive right to make and file objections to all Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be Filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that, the Debtors had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Reorganized Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b.    <u>Estimation of Claims.</u>

Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim as determined by the Bankruptcy Court. If the

estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c.     <u>Cumulative Remedies.</u>

In accordance with the Plan, all of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes or is otherwise deemed in this Plan to be an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

d.     <u>Disallowance of Certain Claims and Interests.</u>

According to the Plan, all Claims held by Entities against whom the Debtors have obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed, pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the Debtors by that Entity are turned over to Debtors or Reorganized Debtor.

e.     <u>Controversy Concerning Impairment.</u>

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date. If

such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

## ARTICLE VIII. — MISCELLANEOUS.

A.       Effects of Confirmation.

1.       Amendments to the Plan.

The Debtors reserve all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Code.

2.       Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Reorganized Debtor shall be authorized, without further application to or Order of the Bankruptcy Court to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Code.

3.       Post-Confirmation Status Report.

Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Reorganized Debtor will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

4.       Retention of Professionals.

The Reorganized Debtor may retain professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval. Persons who served

as professionals to the Debtor prior to the Effective Date may also continue to serve the Reorganized Debtor.

B.     <u>Conditions to Effectiveness.</u>

The Effective Date shall not occur until all of the following conditions have been satisfied:

1.     The entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtors and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however,* that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtors may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

2.     Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all Persons, except as set forth in Article V, from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Interest against the Debtors, or any property thereof, or against any of the Debtors' transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

4.     All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtors, unless the Debtors have waived this requirement in writing.

Upon the satisfaction or waiver of each of the foregoing conditions, the Debtors shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become effective without further Order of the Bankruptcy Court provided that all of the

25

conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

C.      Discharge and Injunction.

1.      Discharge. To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan, the operative documents implementing the Plan, or the Confirmation Order: (a) on the Effective Date, the Confirmation Order shall operate as a discharge under 11 U.S.C. §1140(d)(1) of the Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Debtors, Reorganized Debtor, and all Property that arose before Confirmation, including without limitation, any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Code, and all principal and interest, whether accrued before, on, or after the Petition Date, regardless of whether (i) a Proof of Claim has been filed or deemed filed, (ii) such Claim has been Allowed pursuant to Section 502 of the Code, or (iii) the Holder of such Claim has voted on the Plan or has voted to reject the Plan; and (b) from and after the Effective Date (i) all Holders of Claims shall be barred and enjoined from asserting against the, Debtors, Reorganized Debtor, and its property any Claims. Debts, Liens, Security Interests, and encumbrances of and against all Property of the Estate, and (iii) the Debtors and Reorganized Debtor shall be fully and finally discharged of any liability or obligation on a Disallowed Claim or an Interest. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to Section 1141 of the Code.

2.      Injunction. As part of the Confirmation Order, the Bankruptcy Court shall permanently enjoin and prohibit all Holders of Claims, Liens, Security Interests, encumbrances rights and Interest in, to or against the Debtors and Reorganized Debtor or any of their assets

from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to the terms of the Plan or the operative documents between the Debtors and the Holder of a Claim regarding the treatment of the Claim under the Plan), encumbrances, rights and Interests against the Reorganized Debtor; provided, however, that such injunction shall not apply to any Claim asserted against the Reorganized Debtor after the Effective Date.

        D.    <u>Retention of Jurisdiction.</u>

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in these Bankruptcy Cases with respect to the following matters:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Debtors' Bankruptcy Cases by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Reorganized Debtor in the ordinary course of business without a Bankruptcy Court Order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3. Any adversary proceedings or contested matters brought by the Debtors or the Reorganized Debtor, including but not limited to the Causes of Action, the RFA Preference Lawsuit, and the RFA Fraudulent Transfer Lawsuit;

4. All controversies and disputes arising under or in connection with the Plan;

5. The enforcement and interpretation of the provisions of the Plan;

6. The issuance of such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7. Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8. All Claims arising from the rejection of any executory contract or lease;

9. Such other matters as may be provided for in the Code or the Plan;

10. The protection of property of the estate from adverse claims or interference inconsistent with the Plan; and

11. Ensuring that Distributions are accomplished, as provided herein, and resolving any dispute concerning the right of any Person to a Distribution hereunder, under applicable law, or under a contract or agreement.

E. <u>Headings.</u>

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

F.    <u>Cramdown</u>.

Debtors reserve the right to seek confirmation of the Plan under Section 1129(b) of the Code.

G.    <u>Regulatory Approval and Retirement Plans.</u>

It will not be necessary for the Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the provisions of the Code. The Debtors do not have any retirement plans.

H.    <u>Notices.</u>

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States mail to the following:

> To Debtors:
>
> Tempus Resorts International, Ltd., et al.:
> Roger Farwell, President and CEO
> 7380 Sand Lake Road, Suite 600
> Orlando, FL 32819
>
> With copies to:
>
> Jimmy D. Parrish, Esquire
> Elizabeth A. Green, Esquire
> Baker & Hostetler, LLP
> 200 S. Orange Avenue
> SunTrust Center, Suite 2300
> Orlando, Florida 32801-3432

H.    Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor.

I.    Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

J.    Transmittal of Distributions to Parties Entitled Thereto.

All Distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid.  All Distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as

30

otherwise agreed with the Holder of an Allowed Claim or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a Distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive Distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Reorganized Debtor pursuant to Bankruptcy Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules not defined or in the Debtors' books and records.

K. <u>Distribution of Unclaimed Property.</u>

Except as otherwise provided in this Plan, any Unclaimed Property distributed under this Plan, shall be forfeited and such Distribution together with all interest earned thereon shall become an asset of the Reorganized Debtor.

L. <u>Fractional Cents; Multiple Distributions.</u>

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that Cash remains undistributed as a result of rounding of such fractions, such Cash shall be treated as Unclaimed Property under the Plan.

M. <u>Revocation and Withdrawal of this Plan.</u>

The Debtors reserve the right to withdraw this Plan at any time before entry of the Confirmation Order. If (i) the Debtors revoke and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially

consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

N.    Modification of Plan.

The Debtors may amend or modify this Plan in accordance with Section 1127(b) of the Code, or remedy a defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**RESPECTFULLY SUBMITTED** this 31st day of December, 2010.

COUNSEL FOR TEMPUS RESORTS
INTERNATIONAL, LTD., ET AL


/s/ Jimmy D. Parrish
Jimmy D. Parrish, Esquire
Florida Bar No. 0526401
jparrish@bakerlaw.com
Elizabeth A. Green, Esquire
Florida Bar No. 0600547
egreen@bakerlaw.com
BAKER & HOSTETLER, LLP
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

103669691.3

**Tempus Acquisition, LLC**
10600 West Charleston Boulevard
Las Vegas, Nevada 89135

December 22, 2010

Textron Financial Corporation
45 Glastonbury Boulevard
Glastonbury, CT 06033
Attn: Kyle Shonak

Re:     Proposed Loan from Textron Financial Corporation ("**Lender**") to **Tempus Acquisition, LLC** ("**Sponsor**")

Ladies and Gentlemen:

The following summary of proposed terms ("**Proposal**") is delivered to you in connection with Sponsor's submittal to Tempus Resorts International, Ltd. ("**TRI**") of a bid for purchase of certain assets of TRI and its affiliates.  The closing of any transaction between Sponsor and Lender will be subject to (i) the negotiation and execution of definitive documents generally consistent with the Proposal, in form and substance acceptable to Sponsor in its sole discretion, and (ii) the simultaneous closing of the Transaction (defined below) on terms and conditions acceptable to Sponsor in its sole discretion.

Following is a summary of the material terms on which Sponsor proposes to obtain financing from Lender to restructure the existing financing relating to the Dunes Village Resort in Myrtle Beach, South Carolina existing between  Lender and Tempus Resorts International, Ltd. and its affiliates (individually or collectively, "**Debtor**") to be paid at the effective date of a confirmation of the Debtor's chapter 11 plan of reorganization that includes an equity investment by Sponsor (such transaction is the "**Transaction**").

1.     Loan Amount:  100% of the Inventory Price (as calculated based on the formula set forth on Exhibit A of this letter) of the unsold timeshare inventory (the "**Inventory**") (the foregoing is the "**Loan**").

2.     Collateral:     The Loan shall be secured by a mortgage on the Inventory, which mortgage shall be partially released at each such time as the equivalent of a "Unit Week" (as defined in the Declaration of Condominium for the Resort) is sold by Sponsor.

3.     Interest Rate:        LIBOR (with a floor of 2%) + 5.5%.  Interest will accrue and be paid in arrears on a quarterly basis during the term of the Loan.

4.     Term:          Five years, with two one-year extension options, which options may be exercised by Sponsor upon 60 days prior written notice to Lender so long as no event of default has occurred under the Loan.  The extension fee payable in the event that the Sponsor exercises the annual extension options is $200,000.

5.     Mandatory Prepayment:  It is Sponsor's intention that "Diamond Club Points" shall be marketed for sale by an affiliate of Sponsor through the sales center located at the Mystic Dunes Resort and Golf Club (the "**Resort**") in Orlando, Florida (the "**Sales Center**").  On a monthly basis, (i) all Diamond Club Points sold through the Sales Center and with respect to which any and all rescission rights of the

purchasers have expired, shall be converted to the equivalent number of Fractional Interests (the "**Points Equivalent Weeks**") based on a conversion formula to be approved by Lender prior to closing, (ii) Diamond Resorts Corporation or an affiliate thereof will purchase from Sponsor the Points Equivalent Weeks at the purchase price set forth therefor in a transfer pricing agreement to be entered into prior to closing, and (iii) Sponsor shall pay to Lender proceeds equal to the number of Dunes Village Points Equivalent Weeks times $4,800 (such amount is the "**Release Fee**"), which Release Fee shall be applied by Lender to reduce the outstanding principal balance of the Loan.  For purposes hereof, "**Dunes Village Points Equivalent Weeks**" is the number of Points Equivalent Weeks for such month times a ratio, the numerator of which is the number of Fractional Interests associated with the Resort purchased by Sponsor at the closing of the Transaction over the total number of Fractional Interests and Unit Weeks purchased by Sponsor at the closing of the Transaction.  Upon receipt of a Release Fee, Lender shall issue a partial release of the mortgage encumbering the Inventory to release from the lien thereof the applicable Points Equivalent Weeks.

6.      Voluntary Prepayment: The Loan shall be open to prepayment, in whole or in part, at any time during the term without penalty.

7.      Recourse:                The Loan shall be non-recourse to the Sponsor.  Repayment of the Loan shall be secured solely by Lender's line on the collateral, and no guarantees from any affiliates of Sponsor shall be required.

8.      Cross Default:  The Loan shall not be cross-collateralized or cross-defaulted with any other debt of Sponsor or any of its affiliates.

9.      Servicing Agreement:   Simultaneous with the closing of the Transaction and the closing of the Loan, Lender or its affiliate shall enter into a Servicing Agreement with an affiliate of Sponsor, Lender, and Diamond Resorts Financial Services, Inc. ("**Servicer**"), pursuant to which Servicer shall service the Timeshare Receivables (as defined in Exhibit A) described therein in exchange for a 2% servicing fee and such other usual and customary fees as may be more particularly set forth therein.   The Servicing Agreement shall further provide for a remarketing agreement with terms agreeable to both the Sponsor and Lender.

10.     Transfers:                Sponsor shall be permitted to transfer all or any portion of its interest in the collateral for the Loan to any of its affiliates without the necessity of consent from Lender.


Sincerely,


_____

David Palmer, President
Tempus Acquisition, LLC


AGREED:

_____
Kyle Shonak
Textron Financial Corporation

### Exhibit A

Purchase Price

Inventory

The inventory price for the Inventory is equal to the sum of all Unit Week Purchase Prices.

"**Unit Week Purchase Price**" means, for each Fractional Interest (as defined in the Dunes Village Declaration) constituting a portion of the Timeshare Interests being acquired by Sponsor, the purchase price set forth below, as determined based on unit type (i.e., studio, one bedroom, two bedroom, etc.).

| Unit Type | Hard Inventory per Unit Price |
|---|---|
| Studio | $2,800 |
| One Bedroom | $3,300 |
| Two Bedroom | $3,800 |
| Three Bedroom | $5,800 |
| Four Bedroom | $6,800 |

"**Hard Inventory**" refers to those Fractional Interests which are owned in fee simple by Debtor and are available for immediate sale to a third party purchaser.

"**Timeshare Receivable**" means the debt obligation of a person or entity to Debtor or its successor in interest with respect to the purchase of a timeshare interest which was financed by Debtor, together with all related promissory notes, mortgages, other security documents and agreements, instruments and documents evidencing or governing such debt obligation.